■ ROBANY CORPORATION, Appellant-Respondent, v. WESTCHESTER PLAZA ASSOCIATES et al., Defendants; AGORA LEASING CORP., Respondent, and RICHARD ZIRINSKY et al., Appellants.— In an action to foreclose a mortgage on real property, the parties cross appeal as follows from an order of the Supreme Court, Westchester County, entered March 19, 1965, which granted plaintiff's motion for summary judgment: (1) Plaintiff appeals from so much thereof as denied the motion as to defendant Agora Leasing Corp. (2) Defendants Zirinsky appeal from so much thereof as is adverse to them. Order, insofar as appealed from by the respective parties, affirmed, without costs. No opinion. Beldock, P. J., Ughetta and Rabin, JJ., concur; Christ and Benjamin, JJ. concur in part and dissent in part, with the following memorandum: We agree with the majority's conclusion that summary judgment was properly denied as to defendant Agora Leasing Corp. We disagree with the conclusion that summary judgment was properly granted as to defendants Zirinsky. The subject property is a 12-acre parcel in New Rochelle, adjacent to the New York, New Haven & Hartford railroad station. In August 1956 the railroad, which then owned the property, contracted to sell it to New Rochelle Development Corporation, hereinafter referred to as "New Rochelle." The principal stockholders in New Rochelle then were Edward Aranow and Samuel Greenhut. On November 5, 1956 defendants Zirinsky agreed with Aranow and Greenhut to join in the multimillion dollar financing of the intended redevelopment of the subject property. As part of this agreement, the Zirinskys received approximately one half of the stock of New Rochelle. In July 1958, the Zirinskys, Greenhut, Aranow and New Rochelle agreed that the Zirinskys would return their stock in New Rochelle, and would then get a $257,700 mortgage note and mortgage to secure the moneys previously advanced by them; the mortgage was to be executed by New Rochelle and was to cover the subject property, which was still owned by the railroad and still under contract of sale to New Rochelle; the mortgage was to be held in escrow by J. Lester Albertson, Esq.; it was not to be then recorded, but was to be recorded promptly if New Rochelle took title to all or part of the subject property. Pursuant to this agreement the Zirinskys returned their stock, and the mortgage was executed and deposited in escrow with Albertson. The mortgage, as executed, contained a provision that it was to be subordinate to "Any purchase money mortgages and building loan agreements and building loan mortgages heretofore or hereafter created in connection with the project in which the aforementioned described land is involved." Thereafter, Aranow died and Sidney Rolfe acquired a majority stock ownership and control of New Rochelle, with Greenhut still the other principal stockholder. In October, 1959 the Zirinskys were duly informed of this fact and the fact that Rolfe had received notice of their still unrecorded mortgage. Thereafter Rolfe and Greenhut decided not to take title to the subject property in the name of New Rochelle. They, therefore, had New Rochelle assign its rights in the purchase contract to another of their corporations, Agora Development Corporation. In September, 1960 Agora took title to the subject property in its own name; part of its payment was a $221,343 purchase-money mortgage to the railroad. In October, 1960 there was considerable communication between the parties (by telephone and letters) concerning the substitution of a $257,700 Agora mortgage for the New Rochelle mortgage. Another problem covered by such correspondence was a subordination clause in the proposed substitute mortgage relating to purchase-money mortgages and building loan mortgages. On this point, Agora's attorney informed the Zirinskys' attorney that the sole mortgage then on the property (a month after title had passed to Agora) was the railroad's purchase-money mortgage of $221,343. Despite the plain understanding of the parties, as evidenced by their correspond-

ence, that Agora would execute such substitute mortgage, Agora never did so. Hence, on February 8, 1961 Albertson, the escrow agent, recorded the original mortgage executed by New Rochelle. On December 13, 1961 defendants Low and Bersani bought the subject property from Agora. The deed from Agora stated that the conveyance was subject to "Any question that may arise by reason of the fact that [the Zirinskys] are holders * * * of a [$257,700] mortgage * * * which was to be recorded when the [railroad] conveys the premises to the New Rochelle Development Corporation (but neither the party of the first part nor the party of the second part acknowledges that the note secured by said mortgage or the lien of said mortgage is valid or binding on either of said parties or on said premises)." As part of the payment by Low and Bersani, they gave a $706,832 note, together with a mortgage on the subject premises, to Pan-American Lines, S. A. This note and mortgage were given at the direction of Agora, who owed that amount to Pan-American on an antecedent obligation unrelated to the subject property. This mortgage contained a clause stating that it is subject to: "A mortgage between New Rochelle Development Corporation, as mortgagor, and Richard Zirinsky and Lawrence Zirinsky, as mortgagees, dated July 9, 1958 (if the lien of said Zirinskys' mortgage is deemed to be valid and superior in rights to this mortgage, neither of which is acknowledged by the mortgagor or the mortgagee)". In January, 1962 the Zirinskys started an action against all the previously mentioned parties for a judgment declaring that their mortgage was valid and subsisting. That action is still pending. Thereafter, by mesne assignments, plaintiff acquired the Pan-American mortgage — originally for $706,832.25, and now reduced to $556,832.25. Plaintiff also acquired the purchase-money mortgage originally given to the railroad. Plaintiff then brought separate actions to foreclose the railroad's purchase-money mortgage and the Pan-American mortgage. (The one at bar is to foreclose the Pan-American mortgage). The action on the railroad's mortgage has not been prosecuted to judgment. Summary judgment was sought and obtained against defendants Zirinsky in the action at bar. As noted at the outset, we think summary judgment was improperly granted as against the Zirinskys. In our opinion, their mortgage may well be held superior, not subordinate, to plaintiff's mortgage for several reasons: First, we believe that plaintiff's mortgage is not such a purchase-money mortgage as was intended by the parties to be a lien superior to the Zirinsky mortgage. Second, on the record before us plaintiff would seem to be estopped to deny the validity and lien of the Zirinsky mortgage. And on this record the Zirinskys appear, at the very least, to have an equitable lien which is superior to plaintiff's mortgage. As if cut to fit this case is the definition of equitable liens in Black's Law Dictionary [4th ed.] which reads as follows: "Equitable Liens are such as exist in equity. An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt or obligation or is implied and declared by a court of equity out of general considerations of right and justice as applied to relations of the parties and circumstances of their dealings." Particularly in view of the many complex transactions disclosed by this record, we think the issues here raised cannot and should not be disposed of summarily on affidavits. Their determination should await full disclosure and development at a plenary trial.